UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                                                   :

JAMES W. DABNEY,                                    :

                    Petitioner,                     :
           v.                                           :      Civil Action No. 1:23-mc-78-MKV

HUGHES  HUBBARD & REED LLP,          :

                 Respondent.                :

------------------------------------------------------------- x

================================================================

**PETITIONER'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF MOTION FOR PRELIMINARY INJUNCTION IN AID OF ARBITRATION**

================================================================

                                                    VLADECK, RASKIN & CLARK P.C.
                                                    Attorneys for Petitioner

                                                    565 Fifth Avenue, 9th Floor
                                                    New York, New York  10017
                                                    (212) 403-7300

Of Counsel:
       Anne L. Clark

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

I.    Petitioner's Showing of Threatened Irreparable Harm Stands Unrebutted ........................ 2

II.    Likelihood of Success on the Merits ................................................................................ 4

III.    Balance of Hardships ........................................................................................................ 9

IV.    The Public Interest. ......................................................................................................... 10

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*511 W. 232nd Owners Corp. v. Jennifer Realty Co.*,
   98 N.Y.2d 144, 773 N.E.2d 496 (2002) ...................................................................................7

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
   784 F.3d 887 (2d Cir. 2015) .....................................................................................................1

*Clackamas Gastroenterology Associates, P.C. v. Wells*,
   538 U.S. 440 (2003) .................................................................................................................6

*EEOC v. Sidley Austin Brown & Wood*,
   315 F.3d 696 (7th Cir. 2002) ...............................................................................................8, 10

*Kulhawik v. Holder*,
   571 F.3d 296 (2d Cir. 2009) .....................................................................................................3

*Kwan v. Andalex Grp. LLC*,
   737 F.3d 834 (2d Cir. 2013) .....................................................................................................5

*Lively v. Wafra Inv. Advisory Grp., Inc.*,
   6 F.4th 293 (2d Cir. 2021) ........................................................................................................5

*Metro. Life Ins. Co. v. Glenn*,
   554 U.S. 105 (2008) .................................................................................................................4

*Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.*,
   754 F.2d 91 (2d Cir. 1985) .......................................................................................................2

*New York ex rel. Schneiderman v. Actavis PLC*,
   787 F.3d 638 (2d Cir. 2015) .....................................................................................................9

*Visual Sciences, Inc. v. Integrated Commc'ns Inc.*,
   660 F.2d 56 (2d Cir. 1981) ...................................................................................................4, 7

*WarnerVision Ent. Inc. v. Empire of Carolina, Inc.*,
   101 F.3d 259 (2d Cir. 1996) .................................................................................................1, 4

**Statutes**

Age Discrimination in Employment Act, 29 U.S.C. § 623 et seq. ........................................ *passim*

26 U.S.C. § 411(b)(1)(H)(iii)(II) .................................................................................................. 6, 8

29 U.S.C. § 1140 ............................................................................................................................ 5, 6

The issue before this Court is a narrow one: whether a preliminary injunction should issue "to preserve the status quo pending arbitration." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015). The specific injunctive relief sought by petitioner also is narrow: an order requiring respondent to maintain petitioner's existing HHR e-mail address, telephone numbers, and Citrix access – the same relief that was provided by the Consent Order filed March 24, 2023, in this proceeding (the "March 24 Order").

The importance of court-ordered preservation of petitioner's HHR e-mail box is dramatically demonstrated by respondent's opposition papers filed April 10, 2023. The March 24 Order preserved petitioner's ability to access, and to present to this Court, contemporaneous documentary evidence which contradicts paragraph 4 of the Declaration of Theodore V.H. Mayer filed April 10, 2023 ("Mayer Decl.") and which similarly demolishes respondent's repeated references to a purported "addendum to Policy Memorandum No. 3." HHR Mem. at 5; *contra* Second Declaration of James W. Dabney, sworn to April 18, 2023 ("Second Dabney Decl.") ¶¶ 2–6 & Exs. 4–5. Respondent knew better than to attempt to mislead the Court in this way.

Respondent devotes the bulk of its opposition brief to an irrelevant discussion of whether HHR is justified in refusing to pay pension benefits to petitioner. The relief sought by petitioner, however, is not pretrial payment of pension benefits, but an order "to keep the parties, while the suit goes on, as far as possible in the respective positions they occupied when the suit began," and thus to preserve a future arbitral tribunal's "power to render a meaningful decision after trial on the merits." *WarnerVision Ent. Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir. 1996) (internal quotation marks and citation omitted).

The relief provided by the March 24 Order should be continued pending arbitration, and petitioner's preliminary injunction motion should be granted.

I. <u>Petitioner's Showing of Threatened Irreparable Harm Stands Unrebutted</u>

Petitioner has sworn that he "cannot effectively discharge existing client responsibilities without continued, uninterrupted access to my existing HHR e-mail address, telephone numbers, and Citrix access." Declaration of James W. Dabney dated March 21, 2023 ("First Dabney Decl.") ¶ 40. Petitioner has further averred that "HHR is threatening . . . to humiliate [him] publicly" and is "using its threat of public humiliation to pressure [him] into withdrawing [his] pending EEOC charge (see Exhibit 13 hereto), to pressure [him] into waiving [his] rights to continued insurance coverage under the 2021 PM3[1] (see Exhibit 19 hereto [p.] 3), and to evade any legal of whether HHR's purported freeze of [his] pension benefits in 2019 was wrongful and actionable under 29 U.S.C. §§ 623(a)(1) and (i)(3)." First Dabney Decl. ¶ 41.

Respondent has filed two declarations in opposition to petitioner's motion for preliminary injunction. *See* Mayer Decl.; Declaration of Christina Pakidis sworn to April 10, 2023 ("Pakidis Decl."). Neither of these declarations purports to controvert, or to raise any genuine issue of fact concerning, the inadequacy of money damages as a remedy for the threatened reputational and professional injuries. The reason for this omission is apparent: injury to professional reputation, including through diminished ability to discharge existing client responsibilities, is a well-recognized form of "irreparable" harm. *See Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.*, 754 F.2d 91, 95 (2d Cir. 1985) ("Reputation is not calculable nor precisely compensable.").

---

[1] The term "2021 PM3" refers to the 9-page document headed "POLICY MEMORANDUM NO. 3" which petitioner downloaded from HHR's partner management "portal" on October 21, 2021, and e-mailed to himself that same day, thereby creating a permanent record of its contents. *See* Second Dabney Decl. ¶¶ 4–6 & & Exs. 4–5; First Dabney Decl. Ex. 3. Unable to show that petitioner ever agreed to contractual terms associated with the title "Senior Counsel," respondent has resorted to asserting that the 2021 PM3 purportedly included an "addendum" that petitioner purportedly agreed to. HHR Mem. at 5. Respondent's assertion is contradicted by contemporaneous documentary evidence and is false in fact. Second Dabney Decl. ¶¶ 4–5 & Exs. 4–5.

Being a Retired Partner of a large law firm is an honorific that immediately and unambiguously identifies petitioner to courts, adversaries, friends, family, neighbors, colleagues, students, and others as a person who achieved large law firm partnership, who maintained that station until retirement age, and who acted with the grace that once was expected of partners in large New York law firms. Petitioner emphasized the importance of the honorific "Retired Partner" in his notice of retirement dated June 25, 2021. *See* First Dabney Decl. Ex. 4 ("I am very grateful to have had the opportunity to be a part of Hughes Hubbard. Being a Retired Partner of the Firm will be a continuing source of satisfaction to me.").

Respondent apparently would have the Court find, as a fact, that petitioner's reputational and professional standing with courts, adversaries, friends, family, neighbors, colleagues, students, and others would all be unaffected by respondent now "discontinuing the appearance of a relationship with" petitioner. HHR Mem. at 4; *see id*. at 16 ("[T]here is no reason to believe that identifying himself as a solo practitioner who has in fact separated himself from his prior Firm would being any embarrassment or reputational damage"). Putting aside the facial implausibility of respondent's assertions, it is well-settled that "[a]n attorney's unsworn statements in a brief are not evidence." *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009).

The March 24 Order required that respondent "file and serve on petitioner on or before April 10, 2023, any evidence or legal arguments that it intends to rely on at the hearing of petitioner's request for a preliminary injunction." Respondent has presented no *evidence* purporting to show that money damages would adequately remedy the reputational and professional harms that HHR is threatening to cause petitioner (and itself and HHR clients). The Court should accordingly treat petitioner's showing of threatened irreparable harm as unopposed.

3

Alternatively, petitioner requests the opportunity to give live testimony on irreparable harm and inadequacy of monetary remedies. *Cf. Visual Sciences, Inc. v. Integrated Commc'ns Inc.*, 660 F.2d 56, 58 (2d Cir. 1981) ("On a motion for a preliminary injunction an adequate presentation of the facts is necessary. Where, as here, essential facts are in dispute, there must be a hearing . . . and appropriate findings of fact must be made." (internal citation omitted)).

II.     Likelihood of Success on the Merits

As the Court recognized during the conference held April 11, 2023, the present application seeks merely to preserve a future arbitral tribunal's power to render *a meaningful decision* on the merits of claims as to which petitioner has demanded arbitration. *See WarnerVision*, 101 F.3d at 261. Respondent's professed confidence in its unusual, self-serving theory[2] that petitioner never actually "retired" from HHR (*see* First Dabney Decl. Ex. 12) and so never became eligible to be "paid pension benefits" (HHR Mem. at 1), is simply irrelevant to whether the requested preliminary injunction should be granted. Petitioner will have no meaningful opportunity to arbitrate his pending claims if, in the meanwhile, respondent is permitted to deprive petitioner of access to critical evidence and to continue violating 29 U.S.C. §§ 623(d) and 1140.

Respondent has openly and unabashedly acted to pressure petitioner to drop both a pending charge of age discrimination and a pending exercise of petitioner's rights under the HHR pension plan. *See* First Dabney Decl. Ex. 25 at 2. Respondent's threatened cut-off of petitioner's long-used HHR e-mail address, telephone numbers, and Citrix access is blatantly unlawful "retaliation," as it is known, under case law applying 29 U.S.C. §§ 623(d) and 1140. *See* First

---

[2] Respondent uses the elocution "Administrative Committee" to give false color to its novel theory that petitioner never actually "retired" from HHR. *See* HHR Mem. at 6, 18. An arbitrator will be entitled to reject respondent's theory based on, among other things, respondent's obviously conflicting interest in the issue. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112-15 (2008).

4

1282657 v1

Dabney Decl. Ex. 26 ¶ 2; *Lively v. Wafra Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 n.6 (2d Cir. 2021) (delineating elements of a "retaliation" claim invoking 29 U.S.C. § 623(d)).

"To prevail on a retaliation claim, the plaintiff need not prove that her underlying complaint of discrimination had merit, . . . but only that it was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (internal quotations and citations omitted). Respondent's opposition brief does not even attempt to argue that petitioner lacks "a good faith, reasonable belief" (*id*.) in the merits of his pending claims for age discrimination (First Dabney Decl. Ex. 26 ¶ 1) and for recovery of unpaid pension benefits. *Id*. ¶ 4.

Although the narrow relief sought by petitioner does not require the Court to delve into how an arbitrator will ultimately rule on petitioner's retaliation claims, the weakness of respondent's arguments concerning those claims is telling. 29 U.S.C. § 623(d) provides that "[i]t shall be unlawful for an employer to discriminate against any of his employees . . . because such individual has made a charge . . . under this chapter." Similarly, 29 U.S.C. § 1140 provides that "[i]t shall be unlawful for any person to . . . discriminate against a participant or beneficiary for exercising any . . right to which he is entitled under the provisions of an employee benefit plan."

As to petitioner's § 1140 claim, respondent's sole merits argument is that "a mere denial of benefits is not an 'adverse employment action.'" HHR Mem. at 21. Petitioner's § 1140 claim does not, however, arise from "a mere denial of benefits" (HHR Mem. at 21), but rather arises from "HHR's threat to disable or cut off Mr. Dabney's existing HHR e-mail address, telephone numbers, and Citrix access" *unless* petitioner waived his rights to be free from age discrimination under 26 U.S.C. § 411(b)(1)(H)(iii)(II). First Dabney Decl. Ex. 26 ¶ 2. Respondent's opposition presents no merits defense to petitioner's *actual* claim invoking 29 U.S.C. § 1140.

5

As to petitioner's claim invoking 29 U.S.C. § 623(d), respondent's sole merits argument is that petitioner purportedly was not a statutory "employee" during from 2019 to 2021. HHR Mem. at 19–20. This argument fails for several reasons. First, between 2019 and 2021, petitioner was expressly *deemed* to be an "Employee" for purposes of the HHR pension plan. *See* First Dabney Decl. Ex. 9 ("Employee: Any individual who (i) is a Partner . . ."). Second, on or about March 4, 2022, HHR partner Spencer L. Harrison asserted to petitioner that he purportedly was then an "Ineligible Employee" under Section 2.4 of the HHR pension plan. *See* Second Dabney Decl. ¶¶ 20–21; First Dabney Decl. Ex. 12 at 5–6.[3] Third, respondent is a large partnership managed by a powerful, self-perpetuating Executive Committee (First Dabney Decl. Ex. 13 ¶ 5), unlike the small employer defendants in *Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440 (2003), and in the cases cited on HHR Mem. pp. 19–20. Fourth, respondent *has affirmatively argued* that petitioner was a statutory "employee" between 2019 and 2021:

> While the Department of Labor regulation refers to an 'employee', ERISA's references to 'employees' includes partners and self-employed individuals (see the U.S. Supreme Court's 2004 decision in Raymond B. Yates, M.D., P.C. Profit Sharing Plan et al. v. Hendon (541 U.S. 1)). In addition, as the Supreme Court noted in in [sic] *Yates*, the rules of ERISA are intended to harmonize with the tax provisions in the Internal Revenue Code. Section 401(c) of the Internal Revenue Code and regulations thereunder treats a self-employed individual, such as a partner and a retired partner, as an 'employee' for purposes of the rules that apply to qualified plans, including 411(a)(3)(B).

Mayer Decl. Ex. 7 at 8.

Respondent's ever-changing justifications for discriminating against petitioner (*see* First Dabney Decl. Ex. 12), including a newly minted theory (contradicting the one quoted above) that petitioner purportedly was not, after all, a statutory "employee" between 2019 and 2021, make respondent's unabashed efforts to pressure petitioner to drop his pending claims for age discrim-

---

[3] Respondent has since abandoned Mr. Harrison's "Ineligible Employee" theory.

ination claims and for recovery of unpaid pension benefits all the more egregious. *See* First Dabney Decl. Ex. 25 at 2. Respondent's latest shift of legal theory is an additional ground for *continuing* injunctive relief against HHR, not *lifting* it as respondent urges.

As to petitioner's claim for breach of "the HHR Partnership Agreement" (First Dabney Decl. Ex. 26 ¶ 2), respondent's opposition completely ignores its "implied covenant of good faith and fair dealing in the course of performance." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153, 773 N.E.2d 496, 499 (2002). The 2021 PM3, on which petitioner reasonably relied (*see* Second Dabney Decl. ¶¶ 4–13 & Exs. 4–5), consisted of nine pages and *did not* include the "Senior Counsel" term sheet that respondent has misleadingly, if not fraudulently, presented as part of Mayer Decl. Ex. 2. *See* Second Dabney Decl. ¶¶ 7–10. Insofar as respondent may contend otherwise, its contention is sharply disputed and warrants an evidentiary hearing. *See Visual Sciences,* 660 F.2d at 58.

Under the 2021 PM3, the only distinction between a "Retired Partner" and a "Senior Counsel" is that the latter, but not the former, is entitled to "such office space and secretarial assistance as the Firm deems appropriate." First Dabney Decl. Ex. 3 ¶ 8. Nothing in the 2021 PM3 purported to obligate a "Retired Partner" in HHR to cease practicing law. Rather, the 2021 PM3 provided that: "*As long as a retired partner is not engaging in competition with the Firm*, he or she shall be included in group life insurance and *other group insurance coverage* made available to partners in the Firm, upon payment of his or her share of the premiums for the insurance on the same basis on which such premiums are allocated to partners." *Id*. ¶ 8 (emphasis added).

In addition to pressuring petitioner unlawfully to withdraw his pending claims invoking 29 U.S.C. § 623(a)(1) and 26 U.S.C. § 411(b)(1)(H)(iii)(II), respondent has also pressured petitioner to withdraw his pending challenge to "HHR's exclusion of Mr. Dabney from group insur-

ances made available to HHR partners, in breach of the HHR Partnership Agreement and the 2021 PM3."[4]  First Dabney Decl. Ex. 26 ¶ 3.  The 2021 PM3 entitles petitioner to be included in group professional liability insurance coverage made available to partners in HHR "[a]s long as [he] . . . is not engaging in competition with the Firm."  *Id*. Ex. 3 ¶ 8.  This provision would be rendered meaningless if, as respondent now argues, a "Retired Partner" must cease providing professional services even while *not* "engaging in competition with the Firm."

The negotiating history of the 2021 Retainer Agreement reinforces this point.  Contemporaneous documentary evidence establishes that on October 21, 2021, respondent *proposed* that petitioner "provide services as Senior Counsel," and that respondent's proposal was *expressly rejected* by petitioner.  *Id*. ¶¶ 3, 11-17 & Exs. 3, 6-7.  Petitioner did not realize, at the time, the respondent may have been attempting to mislead him into accepting, sight unseen, a lengthy set of terms that a powerful, self-perpetuating HHR "Executive Committee" had apparently adopted for unproductive partners who were *forced* to retire.  Second Dabney Decl. ¶ 9.  The stigma of "Senior Counsel" was itself sufficient to induce petitioner to reject it.  *Id*. ¶¶ 11–17; c*f. EEOC v. Sidley Austin Brown & Wood*, 315 F.3d 696, 698 (7th Cir. 2002) ("In 1999, Sidley & Austin (as it then was) demoted 32 of its equity partners to 'counsel' or 'senior counsel.'").

The final signed 2021 Retainer Agreement deleted all of respondent's proposed references to "Senior Counsel."  First Dabney Decl. Ex. 5.  The 2021 Retainer Agreement did not incorporate any other document by reference but, to the contrary, prescribed "*the* terms on which Hughes Hubbard & Reed LLP ('HHR' or 'Firm') has agreed to retain you to provide legal services as a retired Partner effective January 1, 2022."  *Id*. (emphasis added).  The definite article

---

[4] The present application does not seek preliminary injunctive relief as to HHR's wrongful exclusion of petitioner from group insurance benefits, as petitioner is not aware of any imminently threatened harm to him flowing from that particular wrongful HHR conduct.

"the" is independently fatal to respondent's apparent contention that petitioner's legal relationship to HHR as of January 1, 2022, included the "Senior Counsel" term sheet that respondent has misleadingly presented as part of Mayer Decl. Ex. 2

Respondent does not deny that petitioner is, in fact, a "Retired Partner" in HHR, and that respondent identifies petitioner as a "Retired Partner" on its public-facing web site to this day. Second Dabney Decl. Ex. 1. Respondent also does not deny that it seeks to prevent petitioner from identifying himself, truthfully, as an HHR "Retired Partner" in professional communications before an arbitral tribunal can pass on the legality of respondent's threatened, allegedly wrongful actions. If petitioner is to have any meaningful opportunity to arbitrate this issue, the requested preliminary injunction pending arbitration should be issued.

### III.     Balance of Hardships

At the very least, petitioner's motion presents "sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *New York ex rel. Schneiderman v. Actavis PLC,* 787 F.3d 638, 650 (2d Cir. 2015) (internal quotation marks and citation omitted). Respondent has presented no evidence that the existing March 24 Order, which merely requires respondent to "(i) maintain petitioner's existing HHR e-mail address; (ii) maintain petitioner's existing HHR telephone numbers; and (iii) maintain petitioner's existing Citrix access," has caused or threatens to cause HHR any "hardship" whatsoever.

The record affirmatively shows, moreover, that following entry of the March 24 Order, petitioner has used his "Retired Partner" position to continue discharging client responsibilities in a highly professional manner. Second Dabney Decl. ¶¶ 22–27 & Exs. 8–10. One client has already paid respondent for the services of HHR-employed attorneys and paralegals that peti-

tioner helped respondent sell in March 2023. *Id*. ¶ 23. Respondent ceased purchasing and paying for petitioner's professional services rendered after January 31, 2023, as was respondent's right to do by terminating the 2021 Retainer Agreement as it did. But so long as petitioner "is not engaging in competition with the Firm" (First Dabney Decl. Ex. 3 ¶ 8), respondent has no good faith basis for interfering with petitioner's discharge of existing client commitments or for excluding petitioner from group insurance coverages made available to Partners in the firm. *Id*.

Respondent plainly has the technical ability to limit petitioner's Citrix access to his own e-mail box contents, personal electronic files, and HHR-maintained electronic files that are pertinent to petitioner's discharge of existing client commitments. Respondent's opposition is devoid of evidence that the narrow relief sought by petitioner would cause any harm to respondent.

IV.    The Public Interest.

Age discrimination is a matter of public interest. A federal agency, the EEOC, is charged with investigating claims of age discrimination. *See Sidley*, 315 F.3d at 702–07. Respondent unabashedly seeks to pressure petitioner to withdraw his pending EEOC charge. The public interest demands enjoining respondent from this illegal conduct pending resolution in arbitration.

## CONCLUSION

Petitioner's motion for a preliminary injunction should be granted.

Dated: New York, New York
April 18, 2023

VLADECK, RASKIN & CLARK, P.C.

_/s/ Anne L. Clark_
Anne L. Clark
Attorneys for Plaintiff
565 Fifth Avenue, 9th Floor
New York, New York 10017
(212) 403-7300

1282657 v1

10