**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JAMES W. DABNEY,

               Petitioner,

    v.

HUGHES HUBBARD & REED LLP,

               Respondent.

1:23-mc-78-MKV

**RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO**
**PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION**

PROSKAUER ROSE LLP
Kathleen M. McKenna, Esq.
Myron D. Rumeld, Esq.
Jacob P.S. Tucker, Esq.
Eleven Times Square
New York, NY 10036-8299
(T) 212-969-3130
(F) 212-969-2900
kmckenna@proskauer.com
mrumeld@proskauer.com
jtucker@proskauer.com
*Attorneys for Respondent*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT FIRM DOCUMENTS................................................................................... 4

FACTS ................................................................................................................................ 7

I.      Dabney Transitions from Partner to Of Counsel and Claims He Is Eligible for
Retirement Benefits ................................................................................................ 7

II.     The Firm's Repeated Attempts to Negotiate a New Agreement ........................ 9

ARGUMENT ..................................................................................................................... 13

I.      Preliminary Injunction Standard ..................................................................... 13

II.     Dabney Will Not Suffer Irreparable Harm if His Motion is Denied ............... 14

III.    Dabney is Not Likely To Succeed On the Merits of His Claims...................... 17

IV.    The Balance of Equities Does Not Favor Dabney ......................................... 21

V.     There Is No Public Interest In Granting Dabney's Motion.............................. 21

CONCLUSION..................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agudath Isr. of Am. v. Cuomo*,
   980 F.3d 222 (2d Cir. 2020)...........................................................................13-14

*Borey v. Nat'l Union Fire Ins. Co.*,
   934 F.2d 30 (2d Cir. 1991)..............................................................................14

*Clackamas Gastroenterology Assocs., P.C. v. Wells*,
   538 U.S. 440 (2003).......................................................................................19

*Danone, U.S., LLC v. Chobani, LLC*,
   362 F. Supp. 3d 109 (S.D.N.Y. 2019)............................................................15

*Faiveley Transp. Malmo AB v. Wabtex Corp.*,
   559 F.3d 110 (2d Cir. 2009)............................................................................14

*GeigTech E. Bay LLC v. Lutron Elecs. Co.*,
   No. 20-cv-10195, 2021 U.S. Dist. LEXIS 152133 (S.D.N.Y. Aug. 12, 2021).......................14

*Grand River Enter. Six. Nations, Ltd. v. Pryor*
   481 F.3d 60, 66 (2d Cir. 2007)........................................................................14

*Maguire v. Level Sights, Inc.*,
   No. 03-cv-2294, 2004 U.S. Dist. LEXIS 13566 (S.D.N.Y. July 19, 2004)............................20

*Pearl v. Monarch Life Ins. Co.*,
   289 F. Supp. 324 (E.D.N.Y. 2003) ................................................................20

*Rex Med. L.P. v. Angiotech Pharms.(US), Inc.*,
   754 F. Supp. 2d 616 (S.D.N.Y. 2010).............................................................13-14

*Rodriguez v. DeBuono*,
   175 F.3d 227, 234 (2d Cir. 1999)....................................................................14

*R.R. P.B.A. of State of N.Y., Inc. v. Metro-N. Commuter R. R.*,
   699 F. Supp. 40 (S.D.N.Y. 1988) ...................................................................14, 21-22

*Schmidt v. Ottawa Med. Ctr., P.C.*,
   322 F.3d 461 (7th Cir. 2003) ..........................................................................19-20

*Shepard Indus. v. 135 E. 57th St., LLC*,
   No. 97-cv-8447, 1999 U.S. Dist. LEXIS 14431 (S.D.N.Y. Sept. 17, 1999) ...................15-16

*Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*,
  No. 13-cv-7639, 2015 U.S. Dist. LEXIS 29904 (S.D.N.Y. Mar. 11, 2015).....................14, 15

*Von Kaenel v. Armstrong Teasdale, LLP*,
  943 F.3d. 1139 (8th Cir. 2019) ....................................................................... 19-20

*Wegmann v. Young Adult Inst., Inc.*,
  No. 15-cv-3815, 2016 U.S. Dist. LEXIS 26674 (S.D.N.Y. Mar. 2, 2016)............................21

*Weinreb v. Xerox Bus. Servs., LLC*,
  323 F. Supp. 3d 501 (S.D.N.Y. 2018).....................................................................18

*Willis Re Inc. v. Herriott*,
  550 F. Supp. 3d 68 (S.D.N.Y. 2021).......................................................................17

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008).........................................................................................13

*Yukos Cap. S.A.R.L. v. Feldman*,
  No. 15-cv-4964, 2016 U.S. Dist. LEXIS 115504 (S.D.N.Y. Aug. 29, 2016).........................16

*Zeuner v. Suntrust Bank Inc.*,
  181 F. Supp. 3d 214 (S.D.N.Y. 2016).....................................................................21

**STATUTES**

29 U.S.C. § 1140.............................................................................................20

## PRELIMINARY STATEMENT

This proceeding, and the unfortunate dispute underlying it, arise from the headstrong insistence by a former law firm partner to be paid pension benefits while continuing to work for firm clients through the firm.  This despite a pension plan provision that bars such payments to plan participants while they continue to provide "services for the firm."  Respondent Hughes Hubbard & Reed LLP ("HHR" or the "Firm") has done everything it could to accommodate its former partner, James Dabney ("Dabney" or "Petitioner"), offering six times in the past five months to negotiate a deal by which he would be paid by the firm out of its general funds in lieu of the pension payments for any work he might do, and has been spurned every time.  The firm is entitled—actually required—to enforce the terms of its pension plan, and treat this former partner just like others under the firm's partnership agreement.  His quixotic insistence that he can proceed as he chooses has no legal basis, and his effort to draw this Court into a false emergency of his own making should be turned aside.

Petitioner was a partner in the law firm of Respondent about seven years until December 31, 2021, when he voluntarily withdrew from the partnership, but remained in active practice with the Firm in the capacity of "Of Counsel."  Thereafter a disagreement surfaced between him and the Firm concerning his retirement benefits, ultimately leading to the filing of a demand for arbitration under the Firm's Restated Agreement of Partnership (the "Partnership Agreement").  Dabney has filed the pending Petition and Order to Show Cause for the ostensible purpose of obtaining a ruling to permit him to retain access to his Firm e-mail account, phone number and Citrix app (one of the gateways to the Firm's electronic document management system and client files) (collectively, "Firm Systems") while he engages in that arbitration.  In fact, Dabney is trying to do something more—something that is simply not permitted under the Partnership Agreement—

1

to be treated as a "Retired Partner" for purposes of immediately obtaining partnership plan retirement benefits while continuing to actively practice law at the Firm.  Dabney's view of his entitlements under the pension plan has been administratively appealed and rejected and is now the subject of arbitration. When viewed in this context, it becomes readily apparent that his demand for interim relief is but an attempt to preempt the issue scheduled for arbitration.

A review of the relevant correspondence reveals that, in an effort to amicably resolve its disputes with Dabney, the Firm has repeatedly offered Dabney the opportunity to choose between the only two options under the Partnership Agreement that are available to him: continue to represent clients as Senior Counsel (or, as he has preferred, to call himself Of Counsel); or discontinue his activities for the Firm entirely, as a Retired Partner, and either transition his clients to the Firm or separately represent them in an individual capacity. The Firm repeatedly invited Dabney, without success, to discuss the terms of a continued Senior Counsel (or Of Counsel) relationship.  The alternative of "Retired Partner" status, would commence the payment of retirement benefits, and—like other Retired Partners who intend to continue practicing law outside of the Firm—cause a disconnection from Firm Systems.  The only reason for the instant proceeding is because Dabney refused to make a choice but rather sought to draw the retirement benefits of a Retired Partner while continuing to practice law at the Firm. This refusal persists, notwithstanding the Firm finally offering Dabney the opportunity to continue to work until his existing client matters are completed *and* to be compensated by the Firm in an amount equal to the forgone retirement benefits for which Retired Partners are eligible.

A review of the record and the relevant provisions of the Partnership Agreement confirms that Dabney has no basis for satisfying any of the conditions for preliminary injunctive relief:

irreparable harm, likelihood of success on the merits, a balance of equities weighing in his favor, and a public interest.

To begin with, there is no irreparable harm flowing from the removal of Dabney's access to Firm Systems—which as noted, is an option the Firm will pursue only if he continues to refuse to continue in Senior Counsel (or Of Counsel) status. Contrary to his assertions, Dabney will suffer no reputational harm if, having retired from the Firm, he takes on a separate phone number and email account—certainly nothing that comes close to the type of irreparable harm warranting preliminary injunctive relief. The Firm agreed that Dabney could take his clients with him if that is what he and they prefer, rather than transitioning to other Firm partners. If he is at any risk of harm to his reputation, it would flow from his choice—at this late date—to swear publicly that the Firm from which he has retired is dishonest. (See Declaration of James W. Dabney ("Dabney Decl.") Ex. 13.)

There is also no likelihood that Dabney will prevail in arbitration in his efforts to continue working while receiving his pension. His pension claims were already administratively denied, and the grounds for denial are set forth in two letters that fully explain the Firm's pension committee's interpretation of the relevant provisions of the Partnership Agreement and applicable law. Dabney has offered the Court no basis for finding that these determinations were in error, and certainly no basis for finding that they are arbitrary and capricious, as required under applicable law.

Finally, the balance of equities does not weigh in Dabney's favor. In fact, the equities weigh heavily against him. HHR has an understandable interest in making sure that the Firm's clients are properly serviced, and that its pension plan terms are enforced. If Dabney refuses to agree to work at the Firm pursuant to agreed-upon terms, then those interests are best accomplished

by discontinuing the appearance of a relationship with him and facilitating the orderly transition of Dabney's representation of those clients to other lawyers at the Firm or to Dabney as a separate practitioner. That separation cannot be accomplished if Dabney continues to have access to the Firm's client files and internal communications system. Furthermore, given the hostility to the Firm exhibited by Dabney, the Firm has an understandable need to separate him from Firm Systems—which it would do even in the case of amicable retirements of its partners who wish to continue practicing law outside of HHR.

In short, because Dabney has satisfied none of the criteria for preliminary injunctive relief, his motion should be denied.

## RELEVANT FIRM DOCUMENTS

Dabney joined HHR as a Partner, effective on or about September 2, 2014. (Declaration of Theodore V.H. Mayer ("Mayer Decl.") Ex. 1.) Dabney's service as a partner was governed by four Firm documents which are particularly relevant in this matter: (1) the Partnership Agreement (Dabney Decl. Ex. 2.); (2) Policy Memorandum No. 3 (Mayer Decl. Ex. 2.); (3) the addendum to Policy Memorandum No. 3 (Mayer Decl. Ex. 2.); and (4) the Partners' Pension Plan (the "Plan") (Dabney Decl. Ex. 9.). Set forth below is a description of the most relevant provisions of these documents.

Section 13 of the Partnership Agreement provides for a dispute resolution procedure to resolve any dispute or controversy related to or arising out of the Partnership Agreement (or any Policy Memorandum or other policy or action of the management of the firm) as to which either party would otherwise have the right to pursue litigation. The parties are to first mediate, and if that is unsuccessful, they have the right to resolve the dispute through binding arbitration. As will be discussed in more detail below, the Firm and Dabney attempted to mediate the underlying

disputes in this matter on January 5, 2023, and were unsuccessful.  Dabney has now demanded that the parties proceed to the arbitration phase of the dispute resolution procedure.

The Partnership Agreement incorporates several policy memoranda, including Policy Memorandum No. 3, which sets forth the rights and procedures relevant to retired partners. Paragraph 8 of Policy Memorandum No. 3 explains that, upon retirement, a partner is entitled to become either Senior Counsel to the Firm or a Retired Partner of the Firm.  The Firm created these two categories in November 2017 and the addendum to Policy Memorandum No. 3 explains the distinction in greater detail. [1]  Paragraph 14 of Policy Memorandum No. 3 states that "unless provided otherwise in a separate agreement between the Firm and a partner which is approved by the Executive Committee" Policy Memorandum No. 3 "sets forth all of the retirement rights of all active current and future partners. . ."  These rights do not include continued access to Firm Systems.

The addendum to Policy Memorandum No. 3 provides a detailed explanation of the rights and obligations of a Senior Counsel.  A retired partner can choose to be a Senior Counsel (as opposed to a Retired Partner) if the retired partner wishes to "remain engaged in some ways in the life of the Firm."  In return for their continued service, Senior Counsel receive certain benefits, including, among other things, office space and secretarial assistance as Firm management deems appropriate, access to the Firm's computer network, listing on the Firm's website as Senior Counsel, and coverage as insureds under the Firm's professional malpractice insurance for Firm-approved professional matters.  Senior Counsel are also eligible to participate in Firm group

---

[1] At various points during this dispute, Dabney insinuated that the Firm fabricated this addendum to retroactively justify its decision to designate Dabney as a Retired Partner.  This is false, the Firm's Executive Committee approved the addendum to Policy Memorandum No. 3 in November 2017 when the Firm created the Retired Partner and Senior Counsel categories.

insurance plans as set forth in Policy Memorandum No. 3.  The addendum makes clear that the Firm may enter into "special financial arrangements with Senior Counsel entitling them to receive fixed payments and/or percentages of collections for all matters for which they have continuing responsibilities."  As discussed below, upon relinquishing his partner status, Dabney entered into such an arrangement.  Though he requested to be called "Of Counsel" and not "Senior Counsel," the provisions of Policy Memorandum No. 3 governed his employment.

By contrast, Retired Partners—being retired—are not required to remain eligible to practice law or take CLE, are not bound by the Firm's restrictions on securities trading and confidentiality, are not required to take cybersecurity training, and do not have access to Firm systems that would give them access to clients' confidential information (including material non-public information of public companies).

Lastly, the current dispute includes allegations that the Firm improperly denied Dabney retirement benefits under the Plan.  Section 5.1 of the Plan states that a former partner is only owed retirement benefits after a "Termination of Employment" and defines Termination of Employment as the "voluntary or involuntary severance of Employment."  The Plan defines "Employment" as "services provided for the Firm."  Section 10.2 of the Plan gives the Administrative Committee the exclusive authority and discretion to interpret and construe the Plan and decide any and all matters arising thereunder and determine all questions regarding entitlement to benefits and determine the time of any benefits under the Plan.  Section 10.3 sets forth the procedure for the Investment Committee to review an Administrative Committee decision.  As discussed below, Dabney unsuccessfully argued his claims relating to Plan benefits to the Administrative Committee and the Investment Committee before proceeding to mediation and now arbitration pursuant to the Partnership Agreement.

## FACTS

Except where otherwise indicated, these facts are based on allegations in Petitioner's Memorandum in Support of Order to Show Cause in Aid of Arbitration or documents attached to the Declaration of James W. Dabney.

**I.    Dabney Transitions from Partner to Of Counsel and Claims He Is Eligible for Retirement Benefits**

On June 25, 2021, Dabney notified the Chair of the Firm, Theodore Mayer, that he intended to retire as of January 1, 2022, but would "continue to be available to assist lawyers in the Firm on such terms as we may mutually agree." (Mayer Decl. Ex. 3.) Between June 25, 2021 and November 15, 2021, the Firm and Dabney negotiated terms of an agreement for Dabney to continue providing legal services to the Firm as "Of Counsel" (the "Retainer Agreement"). (Mayer Decl. Ex. 4.)

Three days before executing the Retainer Agreement, Dabney emailed Mayer and Gerard Cruse, the Firm's Chief Operating Officer, and wrote, in part: "As I understand, I'll not be receiving any benefits from the HHR retirement plan while the retainer agreement is in effect." (Mayer Decl. Ex. 5.) (emphasis added.) He then asked for clarity as to why the Retainer Agreement referred to him as a "retired Partner" and not a "Retired Partner." (Id.) Mayer responded that the lower case 'r' distinguishes a retired Partner from a Retired Partner, "who has severed formal connections and has no access to firm systems." (Id.) Dabney did not object to either the fact that he would not receive retirement benefits during the term of the Retainer Agreement or Mayer's statement that Retired Partners do not have access to Firm Systems. Instead, he responded, "It's OK.  I give thanks every day for what I have," and executed the Retainer Agreement on November 15, 2021.  (Id.)

The Retainer Agreement's initial term was from January 1, 2022 through December 31, 2022 and automatically renewed month-to-month thereafter, provided that neither party sought to terminate it.  Following the initial term, either party could terminate the Retainer Agreement by providing the other party with 60 days' written notice of intent not to renew.  Under the Retainer Agreement, Dabney received $50,000 per month; 20% of any revenues that the Firm received each quarter in excess of the $150,000 amount for that quarter: (a) for services Dabney rendered during the term of the Retainer Agreement, (b) on matters for which Dabney had billing responsibility as of December 31, 2021, and (c) on any matters that Dabney originated during the term of the Retainer Agreement; and a $75,000 lump sum payment at the end of 2022, 2023, and 2024 assuming Dabney did not elect to discontinue employment before the payment was due.[2]  (Mayer Decl. Ex. 4.)

Just a few months later, apparently having forgotten his earlier acknowledgement that he would not be receiving pension benefits during his Of Counsel term, Dabney raised a dispute as to whether the Plan entitled him to accrue retirement benefits for working past the normal retirement age of 65 and whether he was entitled to immediate payment of retirement benefits while providing (paid) services for the Firm under his Retainer Agreement (*i.e.*, a "double dip").  Dabney filed a claim with the Plan's Administrative Committee, which was denied on June 28, 2022.  (Mayer Decl. Ex. 6.)  Dabney thereafter appealed to the Investment Committee, which upheld the Administrative Committee's decision on October 25, 2022.  (Mayer Decl. Ex. 7.)  As the Committees noted, their treatment of Dabney was the same as every other Plan participant who

---

[2] This $75,000 amount reflected payments that the Firm agreed to in 2014 to account for payments from his former firm, Fried Frank, that Dabney forfeited when he joined HHR.

continued providing service for the Firm beyond age 65, including the current Managing Partner, Mayer, the General Counsel, and numerous others.

As discussed below, after the Investment Committee confirmed that Dabney was not entitled to immediate payment of retirement benefits while simultaneously providing services for the Firm as Of Counsel—and was not entitled to receive or accrue benefits past the age 65 Normal Retirement Date—Dabney rejected the Firm's efforts to negotiate a new agreement for 2023 and instead told the Firm that he wished to be treated as a Retired Partner, pursuant to Policy Memorandum No. 3, going forward.  (Mayer Decl. Ex. 8.) As it transpired, Dabney exhibited no intention of discontinuing his active work on behalf of Firm clients.

II.     **The Firm's Repeated Attempts to Negotiate a New Agreement**

In November 2022, as the Retainer Agreement's initial term wound down, Mayer made multiple attempts to negotiate a new agreement covering Dabney's service in 2023, to no avail. Specifically:

- November 3, 2022: Mayer explained to Dabney's counsel that "this is the time of year when our COO and I would normally engage [Dabney] on terms of continuation in 2023."  Dabney's counsel said she would speak to Dabney but never followed up with Mayer.  (Mayer Decl. Ex. 9.)

- November 22, 2022: Mayer followed up with Dabney's counsel and asked permission to reach out to Dabney directly "to discuss the terms of continuation of his Of Counsel role with [the Firm] next year, assuming that he wishes to continue."  (Mayer Decl. Ex. 8 at 2.)  No response was forthcoming.

- November 29, 2022: Mayer provided Dabney with 60 days' notice of termination of the current Retainer Agreement, explained that the Firm wished to reach a new agreement, and told Dabney that "[the Firm's] hope is that we can discuss your expectations for 2023 and prepare a revised agreement to reflect those plans."[3] (Dabney Decl. Ex. 10.)

---

[3] The Firm wished to negotiate a new agreement because the original Retainer Agreement (and compensation structure) reflected Dabney's caseload and expectations as of November 2021, not November 2022.  (Dabney Decl. Ex. 10.)

Dabney's counsel finally responded, but refused to engage in negotiations. Instead, she told Mayer that Dabney "is not currently in a position to discuss what he might do after January 31, 2023," and explicitly requested that Dabney be treated as a "Retired Partner" as defined in Policy Memorandum No. 3. (Mayer Decl. Ex. 8.)

The parties unsuccessfully attempted to mediate the dispute on January 5, 2023. The following day, Mayer reached out to attempt to continue discussions and learned that Dabney had overnight filed an EEOC charge alleging age discrimination. Even after this latest escalation, the Firm repeatedly attempted to work with Dabney on a new agreement, and again, Dabney and his counsel repeatedly refused to engage. Notably, on January 10, 2023, Mayer explained to Dabney that he wished to "have a discussion regarding compensation terms for [Dabney's] continued service in 2023." Mayer then offered again to discuss a new agreement: "You still have the opportunity to continue as Of Counsel if you let us know this month you would like to do so." (Mayer Decl. Ex. 10.)

Dabney once more refused to engage and instead demanded that Mayer sign a letter conceding that Dabney should have received retirement benefits while providing services under his Retainer Agreement. (Mayer Decl. Ex. 11.) On January 24, 2023, Mayer responded to the letter—by again offering to negotiate a contract for the balance of 2023. (Mayer Decl. Ex. 12.) Dabney's counsel again ignored Mayer's offer and responded with a single sentence: "In view of HHR's response to our January 18 letter, Dabney will pursue his pending ADEA claim." (Mayer Decl. Ex. 13.)

Because Dabney had expressed his desire to become a Retired Partner effective February 1, 2023, and refused to negotiate an agreement to enable him to keep working, the Firm sent him

a letter memorializing his Retired Partner status and explaining what the title entailed.  (Dabney Decl. Ex. 15.)  Among other details, this letter confirmed—as Dabney had earlier been told and acknowledged—that Dabney would no longer have access to Firm Systems but if Dabney wished to continue using his phone, the Firm would sell him the phone and transfer his number.   In response, Dabney accused the Firm of threatening him, demanded that he continue to have access to the Firm Systems and stated that he would continue to maintain contact with Firm clients.  (Dabney Decl. Ex. 17.)  Notably, he did not even undertake to continue working only on his existing matters.

Thereafter, between February 1, 2023 and March 17, 2023, the Firm repeatedly restated its position and gave Dabney the choice to either: (1) formally retire, and therefore transition his work to others in the Firm or to himself as a private practitioner—with or without assistance from other HHR attorneys in a co-counsel relationship—and receive retirement benefits; or (2) negotiate a new financial agreement with the Firm, continue providing services for a prescribed time period, and not receive retirement benefits.   In response, Dabney demanded that he be permitted to continue providing services for the Firm while also receiving retirement benefits.

By March of this year, more than a month had passed since Dabney's Retainer Agreement expired.  The Firm determined that—given Dabney's counterproductive behavior—it needed to take action to protect the interests of its clients consistent with the terms of the Partnership Agreement and Policy Memorandum No. 3, and thus designate Dabney as either a Retired Partner or a Senior Counsel who continued to work for clients pursuant to a written agreement.    Thus, the Firm made yet another attempt to engage Dabney's counsel, who responded on March 14, 2023 that Dabney was "not interested in any arrangement that will delay commencement of his pension

benefits" but also wanted to continue providing services for the Firm and accessing Firm Systems. (Declaration of Kathleen M. McKenna ("McKenna Decl.") Ex. 1.)

On March 17, 2023, in a final attempt to resolve the dispute, the firm sent Dabney's counsel a letter presenting two options:

- First, Dabney could continue to provide services to the Firm through March 30, 2023 the deadline for the only significant filing pending in his active cases. The Firm would compensate Dabney for that period of time in an amount equal to what he would receive in retirement benefits if he was a Retired Partner.[4]  After that date, Dabney would be a Retired Partner as defined in the Partnership Agreement and Policy Memorandum No. 3.  He would cease providing services to the Firm, would no longer have access to Firm Systems, and would be entitled to retirement benefits.  The Firm would work with Dabney to ensure smooth transition of his matters, either to him personally or to other attorneys at the Firm; or

- Second, he could continue as Senior Counsel (using the "Of Counsel" title Dabney has preferred) and receive monthly compensation equivalent to the retirement benefit he would receive as a Retired Partner, as well as a lump sum of $75,000.[5]  In return, Dabney would provide services as needed for current open matters, would not take on any new matters, and would bill his time to the Firm consistent with a Senior Counsel status.   Dabney would also sign a general release, including withdrawal of his current EEOC claim. As long as he continued to provide services to the Firm, Dabney would have access to Firm Systems and receive all benefits afforded to Senior Counsel. The proposed arrangement would last through December 31, 2023.

---

[4] The compensation would not actually come from the Plan as Dabney is not entitled to retirement benefits while providing services for the Firm.  The Firm's proposal to pay Dabney directly the same sum he would have earned in retirement benefits was an attempt to resolve the ongoing dispute.  As noted, the Firm previously offered at least six times to negotiate an arrangement for 2023, but Dabney refused to engage.

[5] As discussed *supra* at n.2, the original Retainer Agreement included annual $75,000 payments reflecting compensation that Dabney forewent when he left his previous firm.  Under the Retainer Agreement, Dabney is entitled to receive $75,000 payments in 2022, 2023, and 2024, "assuming Mr. Dabney has not elected to discontinue employment before payment is due."  Because, Dabney would continue as Senior Counsel in the second scenario, HHR proposed including the $75,000 payment for 2023.

(Dabney Decl. Ex. 19.)[6]

In response to this letter, Dabney initiated arbitration proceedings pursuant to the Partnership Agreement and filed the Petition and motion for a preliminary injunction. Dabney specifically asks the Court to enjoin the Firm from disabling Dabney's access to Firm Systems pending arbitration of his claims identified in the Petitioner's demand for arbitration dated March 21, 2023.

In the meantime, in the period since his Retainer Agreement expired on January 31, 2023, Dabney has apparently continued to work on existing Firm matters, including at least drafting and recently filing a brief in a Court of Appeals over HHR's name, without recording any of his time in the HHR timekeeping system. HHR does not know what—beyond the Court of Appeals brief—Dabney has been doing in the name of the Firm while working remotely and accessing Firm Systems. Nor does the Firm know whether Dabney intends to bill clients for his time, cultivate other clients or take on new work for existing clients.

## ARGUMENT

### I.   Preliminary Injunction Standard

The grant of a preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain one, Petitioner must demonstrate four things: (1) that he is likely to suffer irreparable harm; (2) that he is likely

---

[6] In his Declaration, Dabney highlights that the Firm has, on more than one occasion, delayed removing his access to Firm Systems. Though Dabney presents this in support of his arguments, it only serves to show how hard the Firm tried to amicably resolve this dispute. HHR's single greatest priority is protecting its clients including those Dabney has serviced. That is why the Firm engaged Dabney as early as November 2022, more than two months before his Retainer Agreement expired, and repeatedly provided Dabney with options that protected his clients' interests. It is only because Dabney refuses to accept the options available to him that the Firm is forced to take action to protect client interests and enforce the Partnership Agreement and the Plan.

to succeed on the merits; (3) that the balances of equities tips in his favor; and (4) that an injunction is in the public interest.  *Id*. at 20; *Agudath Isr. of Am. v. Cuomo*, 980 F.3d 222, 225-26 (2d Cir. 2020); *see also Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 620 (S.D.N.Y. 2010) (noting that a preliminary injunction analysis "requires the use of the Supreme Court's four-factor test in every case.").  The motion for preliminary injunction must be denied if Petitioner fails to demonstrate <u>any one of these elements</u>.  *See, e.g.*, *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, No. 20-cv-10195, 2021 U.S. Dist. LEXIS 152133, at *17 (S.D.N.Y. Aug. 12, 2021); *R.R. P.B.A. of State of N.Y., Inc. v. Metro-N. Commuter R. R.*, 699 F. Supp. 40, 43 (S.D.N.Y. 1988) (denying a motion for preliminary injunction because movant failed to satisfy one element of the Supreme Court's four-factor test, irreparable harm).

## II.   <u>Dabney Will Not Suffer Irreparable Harm if His Motion is Denied</u>

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtex Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)).  "To satisfy the irreparable harm requirement, [Petitioner] must demonstrate that absent a preliminary injunction [he] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of a trial to resolve the harm." *Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13-cv-7639, 2015 U.S. Dist. LEXIS 29904, at *11 (S.D.N.Y. Mar. 11, 2015) (quoting *Grand River Enter. Six. Nations, Ltd. V. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).  The "mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991).  Even where a movant satisfies some requirements for a preliminary injunction, if it "fails to clear the other hurdles to obtaining the desired relief—including especially the *sine qua non* of

the preliminary injunction: irreparable harm," the Court will deny the motion. *Danone, U.S., LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 118 (S.D.N.Y. 2019).

In an effort to satisfy the requirement to demonstrate irreparable harm, Dabney contends, alternatively, but without support, that he will suffer harm to both his professional reputation and to his ability to discharge existing and ongoing responsibilities to clients in pending cases. Specifically, Dabney claims that it will be "extremely embarrassing, humiliating, and damaging" for him to "be forced to change his existing Court appearances from Retired Partner of HHR to solo practitioner unaffiliated with HHR" because "Petitioner's clients did not hire a solo practitioner." (Petitioner's Memo. at 5.)  This is a circumstance of his own doing.  Dabney could have continued to work as Of Counsel or Senior Counsel through and in the name of HHR.  He could choose to practice on his own and collect retirement benefits.  He was even offered the opportunity to co-counsel with the Firm and still draw his retirement benefits.  What he cannot do is draw retirement benefits from the Firm while not being retired from the Firm.  That's not irreparable harm, it is a choice Dabney made.

Dabney's contention is also plainly insufficient because it is based on nothing more than speculation.  Courts reject motions for preliminary injunction where a moving party claims an imminent reputational harm but fails to offer "specific factual allegations as to how or why this is the case." *Vantone Grp. Liab. Co.*, 2015 U.S. Dist. LEXIS 29904, at *16 (denying a motion for preliminary injunction where the plaintiff claimed that third-party defendants would "damage the[ir] business reputation and dilute the[ir] good name"); *Danone*, 362 F. Supp. 3d at *124 (denying motion for preliminary injunction where movant claimed it would suffer irreparable injury to its reputation but offered only "purely conclusory testimony" which "proves nothing"); *Shepard Indus. v. 135 E. 57th St., LLC*, No. 97-cv-8447, 1999 U.S. Dist. LEXIS 14431, at *24

(S.D.N.Y. Sept. 17, 1999) (denying plaintiff's motion where he provided only "conclusory statements of loss of reputation and goodwill"). Here, there is no reason to believe that identifying himself as a solo practitioner who has in fact separated himself from his prior Firm would bring any embarrassment or reputational damage. Very distinguished attorneys do this every day.

There is likewise no basis for Dabney's contention that losing access to Firm Systems will disrupt his representation of Firm clients. As of now Dabney has only four active matters, of which three are for clients for whom he has been responsible. (Dabney Decl. Ex. 15.) The Firm presented Dabney with the opportunity to ensure that these matters were properly handled. (Dabney Decl. Exs. 15, 25.) With respect to the one matter for which there was an immediate briefing deadline of March 30 in a Court of Appeals, Dabney was permitted to complete that assignment before any changes were to be made. (Dabney Decl. Ex. 25.) With respect to the remaining matters, the Firm has made clear that should Dabney elect to become a Retired Partner and cease providing services as Of Counsel, the Firm would work with him to support whatever decisions his remaining clients made, whether that involved transferring the clients to other attorneys at the Firm, transferring the clients to Dabney as a solo practitioner, or working with Dabney in a cooperative co-counsel relationship. (Dabney Decl. 15, 25.) And, obviously, the mere requirement that Dabney make use of a different phone number or email address could not itself constitute irreparable harm.

Any potential disruption of Dabney's representation of his clients, therefore, would be a problem of his own making. This is not the type of "irreparable harm" that can support preliminary injunctive relief. In *Yukos Cap. S.A.R.L. v. Feldman*, No. 15-cv-4964, 2016 U.S. Dist. LEXIS 115504 (S.D.N.Y. Aug. 29, 2016), the plaintiffs filed a motion for preliminary injunction to restrain the defendant from revealing certain confidential and sensitive information. The Court denied the request because, among other reasons, "the plaintiffs [] had ample time since [the

16

defendant's] termination . . . to open new accounts or switch banks if this were a genuine concern" and their efforts to remedy the situation were "unconvincing." *Id*. at *9. Similarly here, Dabney has been given adequate opportunity to avoid any disruption in the representation of his clients, and thus cannot be heard to demand preliminary injunctive relief because he has refused to avail himself of these opportunities. Even after he turned down at least six times the Firm's offers to negotiate a new arrangement for 2023, the Firm's offer in the March 17, 2023 letter would have allowed Dabney to continue servicing clients as a Senior Counsel (or Of Counsel if he prefers that title) at the Firm, returning him to his status under the Retainer Agreement. In that scenario, Dabney would maintain access to Firm Systems and would be compensated in lieu of the monthly retirement benefits to which he claims he is entitled while providing services. While the Firm has clearly stated that these payments would not actually be pursuant to the Plan because Dabney is not eligible to receive retirement benefits from the Plan while Senior Counsel, the effect would be exactly what Dabney claims he is seeking. Dabney can select this option and avoid all of the purported irreparable harms.

In short, Dabney has not come close to demonstrating the type of irreparable harm that would entitle him to preliminary injunctive relief. As a result, even before turning to the other criteria for preliminary injunctive relief, his motion must fail. *See, e.g.*, *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 85 (S.D.N.Y. 2021) (holding that a Court does not need to consider three remaining elements where movant fails to show irreparable harm).

## III.     Dabney is Not Likely To Succeed On the Merits of His Claims

Dabney's motion is predicated on the assumption that he is likely to prevail on the underlying claims that are headed to arbitration—in particular, the claims that he was entitled to receive retirement benefits while he continued to actively represent clients, and that he was entitled

to greater retirement benefits because he continued to accrue benefits for continued work as a partner past the age of 65; that he has a contractual right to have access to Firm Systems, even as a Retired Partner; and that he has been the victim of retaliation.

As noted, the Firm's Administrative Committee and Investment Committee both reviewed and denied Dabney's retirement benefits claims.  In each case, the Committees fully articulated their grounds for denial and interpretations of the relevant provisions of the Partnership Agreement, Pension Plan, and applicable law.  (See Mayer Decl. Ex. 6; Mayer Decl. Ex. 7.)  First, the Committees determined that, under the terms of the Plan, retirement benefits are available only to partners who ceased active service for the Firm, and not merely to partners who discontinued their work in the capacity of firm partner.  Second, the Committees determined that, consistent with applicable law and regulations, the Firm exercised its rights to suspend the payment of his retirement benefits until Dabney retired, by sending him a Suspension of Benefits Notice.   In his motion papers, Dabney provides no basis for finding that the decisions were arbitrary and capricious, as required under applicable law.  *See*, *e.g.*, *Weinreb v. Xerox Bus. Servs., LLC*, 323 F. Supp. 3d 501 (S.D.N.Y. 2018) (applying "arbitrary and capricious" standard to judicial review of plan administrator's decision under ERISA).[7]   Nor does he dispute that other Plan participants have been treated identically.

 Dabney also asserts that removing his access to Firm Systems would destroy his contractual rights but does not point to any such contractual right in the Partnership Agreement.  If anything, the Partnership Agreement makes clear why Dabney could have no reasonable

---

[7] Dabney does not dispute that the Firm had the legal right to suspend his benefits in this fashion, but instead clings to the argument that he was never sent the Suspension of Benefits Notice.  The accompanying declaration of Christina Pakidis, the Firm's Pension Manager, sets forth the facts supporting the position of the Firm that the notice was sent by the Plan's record keeper, Wells Fargo. (Declaration of Christina Pakidis ("Pakidis Decl.") Exs. 1, 2.)

expectation to maintaining access to Firm Systems, insofar has it clearly distinguishes the role of retired partners who continue active service as Senior Counsel—or in his case, "Of Counsel"— and those who discontinue service entirely and attain the status of a Retired Partner.[8]  And, as noted, there are sound management and professional ethics reasons why retirees no longer bound by Firm conflict and confidentiality procedures should not have access to Firm Systems and, consequently, client files.

Dabney's retaliation claims will fail because he has no cause of action under the Age Discrimination in Employment Act (the "ADEA") or the Employee Retirement Income Security Act ("ERISA").  First, Dabney's underlying complaints of age discrimination arise from rights afforded to him as a former equity partner under the Partnership Agreement and Plan.  The Supreme Court has held that the benefits granted by anti-discrimination statutes, such as the ADEA, are afforded only to an "employee" and not business owners/employers.  *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448-50 (2003). [9]  Courts applying the *Clackamas* factors "have determined that partners or shareholders vested with an ownership interest and/or authority to manage and control the firm or corporation are not 'employees'" for purposes of the ADEA or ERISA. *Von Kaenel v. Armstrong Teasdale, LLP*, 943 F.3d. 1139, 1144-

---

[8] Dabney contends that other Retired Partners are permitted to use Firm Systems.  In reality, the Firm allowed a small group of elderly Retired Partners who no longer practice law to keep their email and phone numbers.  None of them seeks to gain access to the Firm's client files or document management system.  Dabney is an entirely different situation: a former partner who declared that he intends to continue practicing law under the Firm's name while receiving retirement benefits.

[9] As the guiding case which controls the analysis of whether an individual is an employee or a business owner in *Clackamas*, the Supreme Court held that the "common-law element of control is the principal guidepost" for determining employee status. 528 U.S. at 448. In so holding, the Court set forth the following non-exhaustive six-factor test to assess whether an individual is an "employee" under the law: whether the organization can hire or fire the individual or set the rules and regulations of the individual's work; whether and, if so, to what extent the organization supervises the individual's work; whether the individual reports to someone higher in the organization; whether and, if so, to what extent the individual is able to influence the organization; whether the parties intended that the individual be an employee, as expressed in written agreements or contracts; whether the individual shares in the profits, losses, and liabilities of the organization.

45 (8th Cir. 2019) (equity partner in law firm was not an employee of the firm and not covered by the ADEA); *see also*, *e.g.*, *Schmidt v. Ottawa Med. Ctr., P.C.*, 322 F.3d 461, 468 (7th Cir 2003) (shareholder-director in a family medical practice was an employer, not an employee, for purposes of the ADEA); *Pearl v. Monarch Life Ins. Co.*, 289 F. Supp. 324, 326-28 (E.D.N.Y. 2003) (shareholder-physician is not an employee of medical practice within the meaning of ERISA).  As a partner who shared in the Firm's profits and losses, made capital contributions to the Firm, could not be hired or fired by the Firm and was able to influence the decision making policies at HHR, it is evident that Dabney was a business owner.[10]  As Dabney was an equity partner of HHR with all the rights and privileges attendant thereto, his ADEA and ERISA retaliation claims will necessarily fail because he is alleging that he was discriminated against in violation of his purported rights *as a partner* under the Partnership Agreement and the Plan.

Dabney's ERISA retaliation claim will also fail because it is a substantive claim as to what he is entitled to under the Plan, and not an ERISA retaliation claim.  Dabney argues that the Firm's March 17 letter, and specifically the Firm's determination that he must stop providing services to the Firm in order to receive retirement benefits, is retaliation for his asserting rights under ERISA.  Yet the determination by the Plan's Administrative Committee and Investment Committee to reject his demand for retirement benefits because of his continued service for the Firm occurred months earlier.  Section 510 of ERISA does prohibit discrimination against or interference with an employee exercising his rights under a pension plan, 29 U.S.C. § 1140, which requires a showing that the employer took an adverse employment action against the participant.  *See, e.g.*, *Maguire v. Level Sights, Inc.*, No. 03-cv-2294, 2004 U.S. Dist. LEXIS 13566 at *7 (S.D.N.Y. July 19, 2004) (concluding that plaintiff failed to state a claim for a Section 510 violation where there were "no

---

[10] *See* Partnership Agreement Sections 2.D, 4, 7.B, and 10. (Dabney Decl. Ex. 2.)

factual allegations in the complaint to suggest that [defendant] discriminated against or took any adverse employment action against any particular group of employees").  However, a mere denial of benefits is not an "adverse employment action," and thus Dabney's ERISA retaliation claim will fail.  *See Wegmann v. Young Adult Inst., Inc.*, No. 15-cv-3815, 2016 U.S. Dist. LEXIS 26674, at *20 (S.D.N.Y. Mar. 2, 2016) (dismissing Section 510 claim based on allegations that plan was amended to deny plaintiff benefits on the basis of her sex, because for Section 510 claim to survive a motion to dismiss an employer must "take an adverse employment action that consequently prevents an employee from attaining her benefits; mere denial of benefits is not enough"); *Zeuner v. Suntrust Bank Inc.*, 181 F. Supp. 3d 214, 222 (S.D.N.Y. 2016) ("Section 510 is designed to protect the employment relationship that gives rise to an individual's benefit rights, not to create an action for wrongfully withheld benefits.") (quotation marks and citation omitted.)

## IV.     **The Balance of Equities Does Not Favor Dabney**

The balance of equities does not weigh in Dabney's favor.  In fact, the Firm's interest in being allowed to properly represent its clients, manage its practice, and enforce the terms of its retirement Plan and Partnership Agreement, including uniform treatment to other similarly situated partners reaching retirement, significantly outweighs Dabney's interest in continuing to work under the Firm's name under the present circumstances.  The Firm needs to either have a new agreement with Dabney, whereby he continues providing services—and is subject to Firm policies—or facilitate the orderly transition of Dabney's current matters, either to other attorneys at the Firm or to Dabney as a solo practitioner.

## V.      **There Is No Public Interest In Granting Dabney's Motion**

Dabney and the Firm do agree on one thing: there is a public interest in "the stability of contracts."  When a party seeks a preliminary injunction which may be adverse to the public

interest, "more than a fair ground for litigation must be shown" and the moving party holds a "greater burden of persuasion." *R.R. P.B.A. of State of N.Y., Inc.*, 699 F. Supp. 40 at 44. Dabney's motion clearly seeks an injunction that is adverse to the public interest, which is the enforcement of retirement plans and Partnership Agreements. For the reasons stated above, he has failed to sustain the "greater burden" of demonstrating why he should be entitled in the public interest to the injunction he seeks.

As to Dabney's claim that he requires a preliminary injunction to "advance public interests in . . . enforcement of statutory prohibitions against age discrimination . . .," that, at least in part, is what his arbitration is for. It is not a basis for restraining the enforcement of the Firm's practices.

## **CONCLUSION**

For the reasons set forth above, Respondent respectfully requests this Court deny Petitioner's Motion for Preliminary Injunction.

Dated: April 10, 2023
New York, New York

Respectfully submitted,

PROSKAUER ROSE LLP

By: _____

Kathleen M. McKenna, Esq.
Myron D. Rumeld, Esq.
Jacob P.S. Tucker, Esq.
Eleven Times Square
New York, NY 10036-8299
(T) 212-969-3130
(F) 212-969-2900
kmckenna@proskauer.com
mrumeld@proskauer.com
jtucker@proskauer.com
*Attorneys for Respondent*

22